William REEVES, Appellant (Plaintiff),

v.

William BOATMAN, Appellee (Defendant).

No. 88–206.

Supreme Court of Wyoming.

Feb. 28, 1989.

William R. Fix, Jackson, for appellant.

Floyd R. King, Jackson, for appellee.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

URBIGKIT, Justice.

The effect of a litigant's failure to answer a request for W.R.C.P. 36 admissions appears as an appellate issue within the sufficiency of evidence inquiry for contended judgment reversal.

We affirm.

Plaintiff William Reeves, as appellant, and defendant William Boatman, as appellee, were arguably involved for a time in an outfitting partnership in the Jackson, Wyoming area. The business, by trial time, had been sold and sales proceeds of about $9,000 to $10,000 remained in escrow in a Jackson bank. A third "partner," Dr. Donald Bricker, was originally sued by appellant but settled out before trial. After a two-day trial, appellant was awarded a judgment for $1,700, and he now appeals on the basis of the insufficiency of the amount recovered.

This is an unusual sufficiency of the evidence appeal. Appellant submitted requests for admission to appellee which were never answered.[1] Based on the "admissions," appellant now contends that the trial court erred in the minuscule judgment granted. Conversely, appellee, by his successor counsel, contends that appellant, in his testimony, contradicted what had been deemed admitted so that factual issues were provided for trial court decision. In part, what makes the case factually interesting is that the "admitting" party arguably did not create the factual dispute but rather the differences between the admissions and what the benefitting party testified to at trial created the factual conflicts. We will resolve the case without a determination that appellant disproved the admissions which he had obtained.

This appeal asks us to resolve that settled material issues of fact were ignored by the trial court. Consequently, appellant asks for reversal on the basis of an insufficiency of evidence to sustain the decision or, more specifically, the minimal amount of money judgment granted. Our decision is made on the basis that the admissions in themselves did not settle all issues of factual dispute.

In general outline of the confused nature of this case, Dr. Bricker put up the money and acquired the Wyoming hunting camp. Appellee came to be either his agent or partner and appellant thereafter became involved in some additional fashion which may have included a cash contribution. The evidence is clear that the hunting camp was in the name of a corporation, Teton Financial & Leasing, Inc., which briefly entered the litigation as a third-party plaintiff and, as abruptly, was stricken. Dr. Bricker was the sole shareholder of the corporation. Dr. Bricker, a resident of Texas, wanted out of the Wyoming hunting camp business and ultimately, through involvement of appellee, sold the business and it is the proceeds of sale which appellant now sues to share. The case was actually more complex since Dr. Bricker denied that either appellee or appellant were ever partners. It is not clear how the $9,000 to $10,000 in escrow in the Jackson bank relates to the entire sales proceeds, but at least it is reasonably clear that whatever Dr. Bricker got out of the transaction was nothing in excess of what his investments had been.[2]

---

1. Neither original nor successor counsel for appellee moved, pursuant to the second sentence of W.R.C.P. 36(b), to permit a belated answer or withdraw what was, in effect, an admission. Consequently, the discretion of the court issues, which has been generously considered in many cases, was not presented to the trial court in this case for resolution. *Smith v. First Nat. Bank of Atlanta*, 837 F.2d 1575 (11th Cir.), cert. denied — U.S. —, 109 S.Ct. 64, 102 L.Ed.2d 41 (1988); *Bergemann v. United States*, 820 F.2d 1117 (10th Cir.1987); *Rainbolt v. Johnson*, 669 F.2d 767 (D.C.Cir.1981). Cf. *United States v. Kasuboski*, 834 F.2d 1345 (7th Cir.1987), where a motion to withdraw default in answering admissions was not filed.

2. Principally, the case reveals that for a Texas physician to get involved in a Jackson hunting

While still in the litigation, Dr. Bricker submitted twenty-eight requests for admission to appellant which were all denied. After a complex course of pleadings, including discovery proceedings and a motion of appellee's attorney to withdraw for fee nonpayment and after Dr. Bricker settled out in February 1988, appellant submitted a request for admission to appellee in May as including the following:

REQUEST FOR ADMISSION NO. 1. That a partnership existed among William Boatman, Donald Bricker, and William Reeves.

REQUEST FOR ADMISSION NO. 2. That a partnership among William Boatman, Donald Bricker, and William Reeves commenced in 1983.

REQUEST FOR ADMISSION NO. 3. That a partnership now exists among William Boatman, Donald Bricker, and William Reeves.

REQUEST FOR ADMISSION NO. 4. That the Plaintiff William Reeves contributed a total $18,600.00 to the partnership as a capital contribution.

REQUEST FOR ADMISSION NO. 5. That a partnership existed between William Boatman and Donald Bricker.

REQUEST FOR ADMISSION NO. 6. That a partnership now exists between William Boatman and Donald Bricker.

Appellee did not answer and after a change of counsel, the case came to trial with the unanswered requests apparently not discussed in trial court proceedings until opening statement as then by a preliminary inquiry by appellant's counsel as to dispositive effect. As the tangled tale unwound at trial, four witnesses testified in behalf of appellant and portions of a deposition taken from Dr. Bricker were read in open court and three witnesses testified in behalf of appellee.

Accepting the admissions to establish those facts for the purpose of the litigation between these two parties does not decide what is owed to whom and why so; leaving

no further analysis of the evidence required by the trial judge. It is apparent that even with these admissions and after considering all of the testimony, factual disputes remained for the trial court out of the complex and convoluted relationships. The trial court was further required to continue by analysis about the kind of relationship claimed by the litigants in the nature of an oral partnership and how proceeds to be realized from the real owner, Dr. Bricker, were then to be divided between themselves.

Actually, Dr. Bricker sold the camp to an external party for $45,000 and, in his testimony, denied that he ever was a partner with either of the other litigants and particularly so since the hunting camp was in a corporation of which he was the sole shareholder. For him, it was indeed a no profit operation. Taking as established what is included as the substance of the request for admission between the two remaining litigants, we would still discern sufficient conflicts in evidence to factually justify the decision rendered by the trial court. In this analysis, the case comes within the sufficiency of the evidence inquiry for appellate review.[3]

The trial court, in dispositive written judgment, analyzed the case in part:

The Court has drafted this Judgment three times. The third time is a charm.

This is a difficult case because someone is lying. Maybe everyone is lying.

It is true that the defendant failed to respond to Request for Admissions and the law in that regard is clear. On the other hand, it is clear that Mr. Reeves testified contrary to the Admissions during his testimony. It is also clear to the Court that some of the money in escrow at Jackson State Bank belongs to Mr. Reeves. The question is—how much?

This is a most difficult case.

camp with these litigants was, at best, described as high risk.

**3.** The division of sales proceeds between appellee and Dr. Bricker looked more like a finders

fee or sales commission than division of partnership property sale receipts. The record does not reflect the basis for the settlement by Dr. Bricker with appellant during litigation.

The fact that certain contentions are deemed admitted (although probably in part at least questionable, if not actually untrue) by failure of the litigant to deny does not demonstrate trial court error where the subject of the admissions is not sufficient to cover all aspects of the inquiry required to settle the litigants' relationship. We find no error in decision within this record. It was well-characterized in appellee's brief as confusing, contradictory and frequently of little probative value "[where] [t]he District Court had the unenviable task of sorting through various guesses, suppositions, innuendos and vague references in order to get to the truth." [4]

It is a well-established principle of this court that it will affirm the decision of the trial court where sustainable in the record on any proper legal theory. *Kane v. Kane,* 706 P.2d 676 (Wyo.1985). The effect of admissions pursuant to W.R.C.P. 36(b) does not mean that the favored litigant is necessarily absolved from further proof to justify recovery or establish its amount if all dispositive facts involving recovery were not included in the undenied admissions. *Ark–Tenn Distributing Corp. v. Breidt,* 209 F.2d 359 (3d Cir.1954); *Woods v. Robb,* 171 F.2d 539 (5th Cir.1948); *General Acc. Fire & Life Assur. Corp. v. Cohen,* 203 Va. 810, 127 S.E.2d 399 (1962).[5]

With some facts established and many contentions in controversy, we consider the sufficiency of the evidence and sustain the trial court in conclusion.

AFFIRMED.

---

4. The trial court observed during trial:
   Very clear[ly] somebody's not telling the truth, and you have an interesting group of witnesses that you've asked me to rely upon. Mr. Roof who's been convicted of two felonies. And Mr. Kling who really didn't know anything. Mr. Wendell Campbell whose testimony I crossed off. I'm not—he didn't tell me anything at all. His testimony is totally without any credence whatsoever. And now I'm going to become a handwriting expert and I'm not going to do that, but I'll receive those exhibits in evidence but I'm not going to look at them. These request for admissions are becoming more important all the time now. I want some information on these.

   Appellee had originally involved Dr. Bricker in the hunting camp on a "lease out with him" arrangement in 1982. In 1983, appellee and appellant, an Arizona rancher, became acquainted from which their curious relationship in the hunting camp operation ultimately developed. The relationship of appellant to Dr. Bricker appears, at least by Dr. Bricker's testimony, to be that of a potential purchaser to whom this bad investment could be unloaded. Obviously, appellant, like appellee, was less than fully funded.

5. We are well aware that one or more of these cases has been criticized as according weight to the admissions equal only to sworn testimony which, as a contention, was dispositively rejected by an amendment to W.R.C.P. 36 in 1971. The principle, however, remains sound that the scope of admissions reaches no further than the extent of the subject matter recited. See 4A Moore's Federal Practice ¶ 36.08 at 36–68 and ¶ 36.04 at 36–44 (1988). "[M]atters admitted after a failure to answer a request are only deemed admitted as stated in the request." 23 Am.Jur.2d *Depositions and Discovery* § 328 at 621 (1983). "Matters admitted for want of an answer to a request for admissions are admitted only as stated in the request." *General Acc. Fire & Life Assur. Corp.,* 127 S.E.2d at 402.